IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRAVIS TANNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14 C 1804 |
| ) | |
| MICHAEL SIMELTON, MARK ) | |
| JAKIELSKI, MARIA COTRELL, ) | |
| ROY FINLEY, MICHELLE DIXON, ) | |
| HOUSING AUTHORITY OF ) | |
| JOLIET, and CITY OF JOLIET, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

*Pro se* plaintiff Travis Tanner has sued his former employer the Joliet Housing Authority; its executive director Michael Simelton; its chief operating officer Mark Jakielski; its chief administrative officer Maria Cottrell; maintenance department superintendent Roy Finley; property manager Michelle Dixon; and the City of Joliet. Tanner's amended complaint includes six claims relating to his former employment with the Housing Authority.

Tanner, who is African-American, alleges that he because a full time employee of the Housing Authority in 1988. Am. Compl. ¶ 18. In that same year, he became a member of Local 399 of the International Union of Operating Engineers, which represented certain employees of the Housing Authority. *Id.* ¶ 19. Tanner alleges that starting in 2010, certain management-level employees of the Housing Authority began

to subject him to disparate treatment.  *Id.* ¶ 24.  Among other things, Tanner alleges, a disciplinary report was submitted in December 2010 that falsely accused him of misconduct.  *Id.* ¶¶ 34, 35.  Tanner says that he was terminated from employment, in contrast to white workers at the Housing Authority who were not disciplined or terminated for similar alleged misconduct.  *Id.* ¶¶ 36-37.  Tanner alleges, however, that he was reinstated following grievance proceedings.  *Id.* ¶ 39.

Tanner also alleges that he suffered a work-related injury to his knee in January 2010.  *Id.* ¶ 42.  He was placed on disability leave for a month and then returned to work.  *Id.* ¶ 44.  However, he experienced difficulty working due to the injury and was placed on a further period of disability leave.  *Id.* ¶¶ 45, 49, 51.  Tanner was released to return to work in June 2010.  *Id.* ¶ 52.

Tanner says that he suffered a work-related injury to his left arm in December 2012 and reported it to management but was not given an opportunity to submit the required paperwork documenting the injury.  *Id.* ¶¶ 54-56.  He says (though this may be a misprint or typographical error) that in August 2012—a date several months *before* his arm injury—he was called to a disciplinary meeting at which he was asked about the condition of his arm.  *Id.* ¶¶ 60, 61.  During this meeting, Tanner alleges, he was falsely accused of committing various acts of misconduct and was placed on six months of paid administrative leave pending further investigation.  *Id.* ¶ 62.  At a grievance hearing in February 2013, Tanner says, he was presented with "a modified version of the December 13, 2010 issued Employee Disciplinary Report," which (as previously) falsely accused him of misconduct.  *Id.* ¶ 63.  The disciplinary action was nonetheless upheld, and he was discharged effective February 1, 2013.  *Id.* ¶¶ 64, 65.  As a result, Tanner

alleges, his medical insurance was terminated, leaving him without coverage for an MRI examination on his arm scheduled for a few days later (which he says the Housing Authority was aware of). *Id.* ¶¶ 59, 66.

As indicated earlier, Tanner asserts six claims in his amended complaint. In Count 1, a claim under 42 U.S.C. §1981 brought against Simelton and Jakielski, Tanner alleges that he was deprived of certain rights under the Housing Authority's personnel policy manual based on his national origin and race.[1] In Count 2, a claim brought against all five individual defendants under 42 U.S.C. § 1983, Tanner alleges that he was denied his rights under the Illinois Workers' Compensation Act, the Americans with Disabilities Act, and the U.S. Constitution's Equal Protection Clause. Count 3 is a state law breach of contract claim against the Housing Authority; Tanner alleges that he was not given reasonable accommodations for his disability and work-related injury and that he was not provided with "progressive discipline" as required by the Housing Authority's personnel policy. Count 4 is a state law claim of intentional infliction of emotional distress, brought against the five individual defendants and the Housing Authority. Count 6 is a state law negligence claim against the City of Joliet. Count 6 is a claim against the City of Joliet under 42 U.S.C. §1983.

The Court previously granted summary judgment in favor of the City on Count 6. The City has also moved to dismiss Count 5 for failure to state a claim. Tanner states in his response that he agrees to the dismissal of Count 5. *See* Pl.'s Combined Resp. at 1.

---

[1] [1] Tanner uses the term national origin, but it is clear from his allegations that he means this to include race. *See* Am. Compl. ¶ 4.

3

The other defendants have moved to dismiss Counts 1 through 4 for failure to state a claim. Tanner opposes the motion and has also sought leave to file a second amended complaint.

**1.    Section 1981 claim (Count 1)**

Defendants have moved to dismiss Count 1, Tanner's section 1981 claim, based on qualified immunity and on the ground that he has failed to state a plausible claim. *See* Defs.' Combined Mem. at 7-8. Assuming the doctrine of qualified immunity applies to claims under section 1981, it is not close to being a viable basis for dismissal of Count 1 at this stage of the case. Qualified immunity protects government officials from liability for damages to the extent their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Tanner alleges in Count 1 that he was subjected to differential treatment in employment-related discipline based on his race. No viable contention can be made that the prohibition against racially disparate treatment in employment discipline was not clearly established at the relevant time. *See, e.g., McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 285 (1976) (race may not be legitimately taken into account in mitigating discipline of some employees but not others).

The Court also concludes that Tanner has alleged enough facts to support a plausible claim of race discrimination. Defendants make the point that the comparative event Tanner cites in his complaint occurred a little over two years before his own termination in February 2013. If that is all Tanner comes up with, it is conceivable that his case might not survive a motion for summary judgment. But the sort of detail

4

defendants want—citations of specific comparable incidents close in time to the challenged action—does not have to be pled in a complaint. To put it another way, a plaintiff is not required to prove his case in his complaint. All that is required are factual allegations sufficient to raise a right to relief about the speculative level—"enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 556 (2007). Tanner's allegations that, contrary to Housing Authority policy, he was not provided with progressive discipline, and that white employees were given second chances (or more), are sufficient to pass muster for purposes of a Rule 12(b)(6) motion.

**2.      Section 1983 claim (Count 2)**

Count 2 is Tanner's claim under 42 U.S.C. § 1983. It appears that Tanner bases this claim on allegations that he was denied his rights under the Illinois Workers' Compensation Act , the Americans with Disabilities Act (ADA), and the Constitution's Equal Protection Clause. The first two bases are insufficient to give rise to a section 1983 claim. A violation of state law does not create liability under section 1983, *see Martin v. Tyson*, 845 F.2d 1451, 1455 (7th Cir. 1988), and a claim under the ADA requires exhaustion of administrative remedies (which Tanner has not done), and it may be pursued only against the employing entity, not individual supervisors. *See, e.g., EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995). Thus Tanner cannot base his section 1983 claim on contentions that his rights under the ADA and the Worker's Compensation Act were violated.

Tanner's equal protection claim, however—which essentially duplicates his section 1981 claim in Count 1—states a claim for the reasons described with respect to

5

Count 1. The Court therefore declines to dismiss Count 2 to the extent it is based on allegations of race/national origin discrimination.

### 3. Breach of contract claim (Count 3)

In Count 3, Tanner alleges that the Housing Authority's employee policy manual constituted a contract of employment and that the Housing Authority breached it by failing to provide him with reasonable accommodations for his disability / work-related injury; failing to act on his report of his December 2012 injury; and failing to afford him progressive discipline before terminating him. Am. Compl. ¶ 84. Tanner did not attach the full policy manual to his complaint, but defendants have provided the introductory section, which is entitled "INTRODUCTION AND EMPLOYMENT-AT-WILL DISCLAIMER" and includes the following language:

> YOUR HANDBOOK IS, HOWEVER, ONLY A GUIDE; IT IS NOT A
> CONTRACT. NEITHER THE PROVISIONS OF THIS HANDBOOK NOR
> ANY OTHE RHUMAN RESOURCE POLICIES OF THE HAJ
> ESTABLISHES A CONTRACT OF EMPLOYMENT BETWEEN YOU AND
> THE HAJ. YOUR EMPLOYMENT IS "AT-WILL." NEITHER THE HAJ
> NOR ANY OF ITS EMPLOYEES ARE COMMITTED TO ANY
> EMPLOYMENT RELATIONSHIP FOR A FIXED PERIOD OF TIME.
> EMPLOYMENT CAN BE TERMINATED WITH OR WITHOUT CAUSE
> AND WITH OR WITHOUT NOTICE, AT ANY TIME AT THE OPTION OF
> THE EMPLOYEE OR THE HAJ. NO ONE AT THE HAJ MAY CHANGE
> THIS UNDERSTANDING.

Defs.' Combined Mot. to Dismiss, Ex. A.

The general rule in Illinois is that "where the employee manual contains a disclaimer indicating that the manual promises nothing and does not act as a contract, no enforceable contractual rights will be conferred on the employee based on that manual." *Ivory v. Specialized Assistance Servs., Inc.*, 365 Ill. App. 3d 544, 546, 850 N.E.2d 230, 233 (2006). Tanner alleges no facts and offers no argument that would

render the general rule inapplicable in his case. (Indeed, the Court notes that in his proposed second amended complaint, Tanner has not included a breach of contract claim.) Defendants are entitled to dismissal of Count 3.

**4. Intentional infliction of emotional distress claim (Count 4)**

The Court agrees with defendants that a one-year period of limitations applies to Tanner's claim for intentional infliction of emotional distress, Count 4 of his amended complaint. *See* 745 ILCS 10/8-101. The last act Tanner alleges in his complaint was his discharge, which took place on February 1, 2013. Thus the limitations period on his emotional distress claim expired on February 1, 2014. Tanner did not file suit until March 14, 2014, about six weeks too late. Count 4 is time-barred and is dismissed for that reason.

**5. Argument regarding time-barred allegations**

Defendants also ask the Court to strike allegations in Counts 1 and 2 that they claim are beyond the statutes of limitations that apply to those claims. Tanner responds that he is alleging a continuing course of conduct that may have culminated in his termination in February 2013 but that began much earlier. The question of whether conduct outside the limitations period may be considered part of a continuing course of conduct that ended within the limitations period largely depends on whether the earlier acts involved independently actionable events. *See, e.g., Moore v. Burge*, 771 F.3d 444, 446-47 (7th Cir. 2014). It is likely that Tanner's 2010 termination, if discriminatory, was independently actionable. But even if this is so, a history of discriminatory actions aimed at Tanner may be admissible evidence as background for the more recent events

7

or to show the defendants' animus. Thus striking these allegations at this stage of the case would be inappropriate.

The Court notes that in any event, a four-year limitations period applies to Tanner's section 1981 claim (Count 1), and none of the misconduct he alleges, including the 2010 termination, appears to have taken place more than four years before March 14, 2014.

**6.      Request to file second amended complaint**

Tanner has also sought leave to file a second amended complaint. The Court grants the motion, but that does not mean that matters start over from scratch. The proposed second amended complaint does the following:

- it includes essentially the same Counts 1 and 2 that were in the first amended complaint;

- it drops the breach of contract claim that was in the first amended complaint;

- it adds as Counts 3 and 4 claims for conspiracy to violate Tanner's equal protection rights under 42 U.S.C. § 1985(3) and for violation of the Illinois Constitution's equal protection clause, based on his allegations of race discrimination;

- it includes as Counts 5 and 6 the same time-barred emotional distress claim and the negligence claim that the Court has dismissed; and

- it includes as Count 7 the *Monell* claim against the City of Joliet on which the Court granted summary judgment against Tanner.

Although the Court has permitted Tanner to amend his complaint, there is no basis to require or permit re-briefing with regard to Counts 1 and 2. Those are viable

claims that the defendants named in them must answer.  There is likewise no basis to require or permit re-briefing with regard to Counts 5 or 6; those claims have been dismissed, and Tanner alleges nothing new.  The same is true of Count 7; the Court already granted summary judgment against Tanner on his *Monell* claim against the City.

The Court is inclined to conclude that Counts 3 and 4 state viable claims because they essentially track the equal protection and race discrimination claims contained in Counts 1 and 2 that the Court has declined to dismiss.  But because defendants have not yet had a chance to address the new Counts 3 and 4, the Court will give them a chance to seek dismissal of those claims if they believe they have viable arguments supporting dismissal that the Court has not already rejected.

**Conclusion**

For the reasons described in this order, the Court grants the City of Joliet's motion to dismiss Count 5 [dkt. no. 64] and grants in part and denies in part the Housing Authority defendants' motions to dismiss the remaining claims [dkt. no. 77].  Counts 3, 4, and 5 of the amended complaint are dismissed for failure to state a claim, and as noted earlier the Court has previously granted summary judgment in the City's favor on Count 6.  The Court declines to dismiss Counts 1 (against Simelton and Jakielski) and 2 (against Simelton, Jakielski, Cottrell, Dixon, and Finley) of the amended complaint.  The Court also grants Tanner's request to file a second amended complaint.  That complaint will proceed as to Counts 1 through 4, but not Counts 5 through 7, which are dismissed.  Defendants are directed to answer Counts 1 and 2 of the second amended complaint by no later than May 21, 2015.  By that same date, they are to respond to Counts 3 and 4

the second amended complaint.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 30, 2015